Good morning, Your Honors. May it please the Court, Ryan stood on behalf of Mr. Smith, the petitioner. I'd like to reserve two minutes if possible for rebuttal. The Court should reverse Mr. Smith's two-year revocation sentence because the process that he received before the District Court at the hearing was fundamentally unfair. The government introduced prior recorded statements of the only eyewitness to identify Mr. Smith as the assailant, and then it withheld an additional prior recorded statement of its key witness that was both impeaching and exculpatory. That presents two problems with respect to the revocation, both merit reversal. The first is that it's a violation of Mr. Smith's rights under Brady v. Maryland, and the second is that it violated Mr. Smith's rights under Federal Rule of Criminal Procedure 26.2. Returning to the first issue, Brady v. Maryland, what the government did in this case that's so unfair is that it used prior recorded statements of Ms. Duncan, where she told the police clearly and specifically that Mr. Smith had hit her and that she had not called 911. It used those prior recorded statements and argued to the District Court that those statements should be credited. For Ms. Duncan's part, she testified... Prior recorded statement is Officer Truong's body cam? There were four officers, Your Honor, in two separate domestic violence incidents, but yes, the prior recorded statements that were admitted to the District Court were all body cam footage. And what you call the prior recorded statement that they didn't get is the actual 911. Correct. And our information on that is from Officer Truong's laptop, which is a direct recording of the 911 operator's notes. Am I correct on all of that? I think the court is largely correct. Just to be precise, Officer Truong testified that he received information related to Ms. Duncan's 911 call on his laptop. He was clear that Ms. Duncan was the caller, and he recited essentially a summary of the call where Ms. Duncan reported that she was possibly hit. The record is unclear about whether Officer Truong received an entire transcript, for example, or exactly what he received. His testimony wasn't reading off of something. He was testifying basically as to what he recalled seeing? Yes. That's correct. But his recollection was clear on the fact that Ms. Duncan made the call. I followed up, for example, on cross-examination and pressed him to ensure that he was clear on that, and he responded that he was. You're not saying that that was inadmissible evidence, are you? What was inadmissible? From Officer Truong. No, Your Honor. I'm saying... What you want is presumably, what, a cassette of the 911 call itself, or the physical paper notes or type notes of the operator? Exactly what is it that you're saying that you didn't get? It would be the recorded 911 call. The recorded 911 call based on Officer Truong's testimony is both exculpatory and impeaching of Ms. Duncan's testimony. Again, what- And the difference, what you think is exculpatory is that it's possibly hit instead of definitely hit, right? That's the exculpatory aspect? Yes. But wasn't she- And how is there any question that she was hit? Wasn't she injured? She testified that she, or she told the police on both incidents, on November 7th and November 9th, that she was hit and injured. The photos, for example, that the government's introduced in its supplemental excerpt of record before this court relate largely to the November 9th domestic violence incident where she, you can clearly see that her face is bloody. There's the blood smeared on the door, on the bedspread as well. There's clearly been an act of violence. The November 7th incident, it's less so. I mean, the pictures are not nearly as clear. And so, yes, it would be impeaching if Ms. Smith is saying, excuse me, if Ms. Duncan is saying clearly to the police, I've been hit and my assailant is Mr. Smith, if she's saying that she's possibly been hit, I think that that changes the circumstances substantially and it is exculpatory. I guess I'm just confused because the call did say it's the father of my children, which would have to be him. And so, if the only issue is possibly hit versus actually hit, but they can see injuries, it just doesn't seem like it makes that much difference or any difference. Your Honor, I would turn the court to the excerpts of record with respect to the actual testimony. I don't believe that Officer Tarong testified about who Ms. Smith or Ms. Duncan said hit her on the call. The presumption, I suppose, from the government's perspective is that she identifies the father of her child. That's what Officer Tarong testified. But I don't think that it's entirely clear from Officer Tarong's testimony that she clearly identifies Mr. Smith as the assailant in the 911 call. There's no other possible father that's in the evidence anywhere, is there? No, Your Honor. Not that's in the evidence. Can I ask you, I know your position is that the government had to provide this. Did you have any means or ability to seek the call yourself? I know you think you didn't have to do that, but could you have? In theory, yes. I would say that the Supreme Court and this court in analyzing Brady and Rule 26.2, they don't place the burden on the defendant. The onus under Rule 26.2 is on the government, who calls the witness. And similarly, it's the government's obligation to investigate, obtain, and produce Brady evidence. But those are all from non-supervised release violation context, are they not? That's correct. I mean, because I guess the global thing that occurs to me is this is not a jury case before potentially flim-flammable jurors. You've got a federal district judge who knows all about what your argument is, who can take that into account, and can be more assertive if he thought it would make much difference. But I just see nothing here that would lead me to think that no matter what's on the tape is likely to influence. The judge knows all this. He can take it into account in making his decision. And of course, this is only relevant to one of the two incidents, in a sense the less violent of the two, isn't it? Your Honor, there's a number of questions there. I'd like to leave to respond at least in four parts to the court's question. First, with respect to whether this applies just in the context of Brady in a criminal trial, for example, federal rule of criminal procedure through statute applies in this context. So that's not just in front of a trial. There's no question that essentially the Jenks Act applies in this context. Second, the district court didn't have the tape, and neither did Mr. Smith. So presuming that the district court, that this wouldn't have changed the district court's position is wholly speculative. We don't have the tape here today, and that's the point. And in analyzing prejudice under Brady, I would point the court to Kyles v. Whiteley at 514 U.S., page 434 and 435 in the decision. It goes through a lengthy analysis of what qualifies as prejudice under Brady. And it's favorable for Mr. Smith in this context, and I'll quote, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. Here, the government presented recorded statements of Ms. Duncan, argued to the district court that they were very clear and credible, and the district court agreed. By contrast, Ms. Duncan testified, I didn't make those statements, and they're not credible. That was her in-court sworn testimony, and the district court was in a position of crediting which was true. And in that context, to have suppressed or withheld an additional recorded statement that would have cast doubt on her very credible, in the government's view, prior recorded statements is wholly unfair, and Brady should apply in this context. Can I ask you on the Rule 26, Jenks issue, did the United States have an obligation to produce a call that was being held by the San Diego Police Department, or is that obligation limited to essentially federal entities? No, Your Honor, I would point to this court's decision in United States v. Price. It's controlling and compels production in this case. The facts in United States v. Price are that Mr. Price was arrested by a local police department, in the Pacific Northwest, after they found a gun in his car. Mr. Price was then prosecuted by the U.S. Attorney's Office, a federal law enforcement organization, obviously. Is that a Rule 26 case or a Brady case? That's a Brady case. And it's also a case... Brady's a little... I mean, Brady may be a little different, though, than Rule 26, no? Sure, but the question in Price was whether it was in the possession of the U.S. Attorney's  And when analyzing whether the 911 call is in the possession of the U.S. Attorney's Office, this court, under Price, looks at whether the state law enforcement agency was the lead investigating agency. And here, that's clearly the San Diego Police Department. Take a step back more broadly and look at the evidence that was presented in this case. The government called four San Diego police officers. It obtained their body camera footage. It obtained their police reports. After cross-examination of Officer McConnell at the first hearing, I made a Rule 26.2 objection because she had a recorded call with Ms. Duncan. The government complied at the order of the district court and produced that additional recorded call. The district court later said, you know, maybe I shouldn't have ordered that, but that did happen. Sure, but look at it as a matter of fact and procedure in this case. The government's getting its witnesses from the San Diego Police Department. It's getting its evidence from the San Diego Police Department. The San Diego Police Department records are within its possession, within- So, am I understanding your argument about Price is that even though it's a Brady case, the fact that it used the word possession now tells us something about what possession means? Is that what you're arguing? Well, I think that this court and Bryan, Santiago, and Cano are three decisions that talk about what's in possession of a federal law enforcement, excuse me, US Attorney's Office, when a state or other non-related law enforcement agency is involved in the investigation. But if Brady is broader, I mean, so if Brady is broader and the working together is enough in the Brady context, but it might not be in Rule 26, then I don't understand. I mean, perhaps you use the word possession in Brady if you mean possession or control or access or something, because all those words are the same within Brady, but they may not be the same within Rule 26. Your Honor, I think that in this context, the government possessed and had access to records within the San Diego Police Department. And there's no argument that the government made after I raised a Rule 26.2 objection to the 911 call where the government said, this is not in our possession. We're unable to get this 911 call in a way that's materially distinct from the body camera footage and the police reports and the other recorded call that we produced. So I just don't think that that record is before the court, which before the court factually is that all of the evidence was obtained from the San Diego Police Department and that the government failed to seek and obtain the 911 call because it didn't see a Brady obligation. They seem to maybe, I mean, we can hear from the government on this, they seem to have some difficulty, you know, getting materials from them. Is that true? The government's certainly free to take that position on appeal. I don't think that the record supports that conclusion, though. Again, all of the evidence was obtained from the San Diego Police Department. All of the witnesses that the government presented except for the probation officer and Ms. Duncan were San Diego police officers. And the government did not argue to the district court that they were unable to obtain the 911 call. The district court, after I raised the Rule 26.2 objection, ruled on it directly without hearing from the government. So the government has not made a record before this court that the 911 call is somehow different from the body camera footage, the other recorded call, the reports, and the witnesses that it presented, all from the same law enforcement agency. Do we know for a fact that the 911s go to the police department as opposed to some public EMT or call center? We don't as a matter of fact. The government on appeal cited an NPR article before this court talking about call centers largely in Denver, Colorado. That is just simply not the type of reliable argument and evidence that this court should look to. In Brady, for example, under the second step analyzing if Brady applies, once a defendant has made a prima facie showing that evidence has been suppressed, the burden then shifts to the government to show that it hasn't or it didn't have access or some, you know, to respond. Okay. But even if I'm not saying you had an obligation, but you did not try to, you know, ask who has the tape, where is the tape? Thank you for asking that question again. No, I did not. And please let me briefly try to answer that question as well. The existence of the 911 tape was raised at the finality of the second day of this revocation proceeding. So, I did not have, just as a practical matter, advance notice of the 911 call. Had I had advance notice of the 911 call, I suppose I could have tried to subpoena it. I did subpoena other... So, the Truong only sort of appeared as a witness at the end of the second day? That's correct. He was the penultimate witness. Officer McConnell then testified briefly after Officer Truong, and then we transitioned directly into the legal objection under 26.2. Brady again, kind of closing arguments and sentencing, all folded into one, you know, the conclusion of the hearing. I know that I'm over my time, and I appreciate the indulgence with that. If I may briefly have a few minutes in rebuttal. You sure may. Let's put three minutes on the clock when you come back. Thank you for your presentation. Good morning. May it please the court, Zach Howe on behalf of the United States. I'm happy to address the applicability of the different evidentiary standards. I'm happy to address the possession issue, but I do think it's important to just start at the heart of the matter here, which is that taking Officer Truong's account as true, this evidence would have destroyed the defense, because in this call, Officer Truong says that the victim identified the father of her children as the person involved in the incident. And as Duncan testified on the stand, Smith is the father of her children. And that was the only disputed element in this case. And the court has seen the videos, I'm sure. You can make this assessment for yourself. But in both assaults, she was beat to a pulp. There was no dispute that an assault occurred. And in fact, defense counsel at the hearing repeatedly conceded that an assault occurred. I'll give you just one quote at page 60 of the record. It says, the evidence shows an assault took place, but not necessarily that Mr. Smith was involved. Page 153 and 154, he makes similar comments. And everywhere in between, he is simply talking about what he deemed alternative theories of who committed the assault. And he's talking about Michaela being a possible culprit. So that was the only disputed element. And this evidence, by his interpretation, should be what Officer Truong said it was. Well, Officer Truong identified the caller as identifying Smith as the assailant. So this is not Brady evidence, because it's not favorable. It's, in fact, highly damaging to the defense in this case. So I think based on that rationale alone, you can dispose of this case without reaching some of the more complicated issues. But let me try and delve into some of those as well. I mean, it is true, though, that we don't literally know what's on the call. We have Truong's two-step or one-step removed on that. At least it's in theory. Maybe she wasn't hysterical. Maybe she sounded like a wronged woman who's trying to drop her man in on it. I mean, they don't really tell us what their theory of it is. But isn't that kind of the speculation that we're asked to think that might have turned around a U.S. district judge? I think that's right, but I think you have one of two possibilities here. If you go with the victim's account, she says on the body-worn camera that she did not make the call, that a neighbor made the call. And then she repeatedly references a neighbor making the call. So if you accept that account, then this is not her statement at all. But then if you accept Officer Truong's account, which is the one that Defense Counsel was asking you to credit, that's the one where, according to him, she made the call and she identifies Smith as the assailant. Again, that's the only disputed issue. The only grist for the mill that he actually gets out of this is the possibly hit statement. But again, because that was an undisputedly proven element at trial and because he repeatedly conceded that the assault took place, I don't see what it does for him. So I think with all of the evidence you have, it's going to lead you to one of two conclusions, neither of which amounts to favorable evidence. Anything else would be pure speculation. I don't think that meets a requirement under Brady or even a lesser standard for a revocation hearing. But if I could address the other issue that's come up, it's this issue of the government actually possessing the 911 call. It's true, the government wasn't asked for its position on any of these issues, so there was no record laid in this respect. Now, I will concede that it is a low burden to show that the government possesses the information you want. But Price does say that the defendant has to offer some evidence to that effect. And here, there has been no evidence that the federal government or the federal prosecution had this, let alone that the local police department had it. Because, look, I agree, there's no evidence on where this call was ultimately routed. But I don't think it takes more than common sense to say that when you call 911, they can't just send a police car. They can also send an ambulance or a fire truck or anything else. So these call centers don't just service a police station. So I think to- But does the United States' duty to gather information differ under Brady versus Rule 26? Yes. So Brady, it would be anything favorable and material to the defense. Whereas Rule 26, that's just an incorporation of the Jinx Act. And then there's also under Rule 32.1, the requirement that we turn over evidence used against the defendant. So it would be witnesses' statements and evidence against the defendant. But what about the scope of possession, like the definition, or what counts as possession? I thought that Brady had a broader scope of getting information from cooperating agencies than Rule 26, potentially. You just answered with something substantive about the statement, rather than the scope of possession. So I think that would go to the question of whether Brady applies in revocation proceedings. If it did apply in revocation proceedings, then I think you would probably adopt the same definition of possession that you use in the underlying trial proceedings. If Brady doesn't apply in revocation proceedings, then it may be that there is a more lax standard for possession. But here, I don't think you have to get into- But what about Rule 26? I think what Judge Brest may have been asking. What I'm curious about is, does Rule 26 have as broad a scope in terms of what counts as where things might be that would be in the government's possession as Brady does? I see. Possession might not be the right word, but access. I see what you're saying. So I don't know that the rule ultimately gives any indication on whether it's meant to be coterminous with the definition of possession under Brady. What I can say is this, even if you were to apply the Brady standard, what Brady says is that you can impute, in some instances, the possession of the agency that you're calling as witnesses to the government. But here, you would have to go a step further than that to find possession because you're not just saying that, well, the government called a police officer, therefore we're going to impute possession of the police office to the federal government. You're going that extra step and saying, we're going to impute possession from the call center to the police station, to the federal government, to the federal prosecution. Again, this is a low burden to show that the government has the evidence you want, but you do have to offer some evidence. And when there has been zero questioning on this issue, when you have the officer on the stand to ask, hey, did you actually get the call? Then I don't think it can be said that the defendant has met his burden to show that possession actually adhered. Can I ask you a little broader question, which may not be implicated here, but what is the policy of your office with respect to Brady material in these revocation proceedings? Because we see the argument made that Brady doesn't apply here. There's lots of case law that talks about the rights of defendants being much lower in the revocation context. On the other hand, if the government's in possession of some highly exculpatory evidence, you might hope that it would be provided. And what are the limits and what are the rules that govern here? Sure. So I may be missing something. I tried to look at the Justice Manual and I cite it in a footnote here. For actual underlying trial proceedings, we go beyond Brady disclosures. For revocation proceedings, I'm not aware that we have rules governing it. Again, I could be wrong here. But what I will say is that prudentially, certainly would be my practice to turn over any Brady material. And I think it would be our office's practice. And I think that's the reason why this question has only ever been teed up in this sort of academic setting where, at least to my lights, this evidence is actually highly damaging to the defense. So prudentially speaking, I think our general practice would be to turn any Brady material over. Do you think the obligation should differ in the revocation context? Should it be the same as the trial context? Should it be lower? What's the answer? It should absolutely be different, both because of the nature of Brady and because of the nature of the revocation proceeding. On the Brady side, Brady expressly says that the purpose of the due process right it is recognizing is avoidance of an unfair trial. And this court has said time and again that a revocation is not part of the underlying criminal proceedings. And that's why this court has held that things like proof beyond a reasonable doubt, or Miranda, or the confrontation clause, or collateral estoppel, or the exclusionary rule don't apply to revocations. And in the Morrissey case from the Supreme Court, it expressly addresses the due process rights that are due to defendants in the revocation context, and it addresses disclosure rights. And it says you're entitled to disclosure of evidence against you. And then this court in Sam and Donahue reinforced that conclusion. But that's an interpretation of the due process clause. Brady is an interpretation of the due process clause. So you have authority on point saying due process does not dictate disclosures that are as wide as Brady disclosures in the revocation context. So again, I don't know that you have to address that case here because this just isn't Brady material. But if you do get to it, then I think you should conclude that Brady is not the understanding. Is there any law on this question? Has anybody addressed this? To my knowledge, there is, and we cite these cases in our brief, there is dicta from one, I believe it's a Fifth Circuit case, suggesting that Brady may not apply, doesn't address it firmly. And I believe there's one unpublished decision that in a footnote concludes that Brady does not apply. I think that may be a Sixth Circuit decision. Then you have about a dozen district court cases that have said Brady does not apply to revocation proceedings. But in terms of an actual binding circuit court holding, I'm not aware of any case that has reached that issue. Mr. Stitt says, well, you know, maybe the rule should be different when the reason for the revocation is a wholly different crime. Do you have a view on that? This court has expressly addressed new allegations of crimes and how that affects the revocation proceedings. I'll point you to the Oliver case. And there it said that a proof beyond a reasonable doubt standard did not apply, even though it was an allegation for a new crime. Its exact quote is, that is true, even when the violative act is a criminal offense. And there are- That's fair. I mean, I guess the question is, would that matter in deciding how Brady possibly, or a Brady-like principle could map on to the revocation proceeding? I think it would absolutely matter if new charges were brought for that new criminal act in those proceedings. But in the revocation context, no, I don't think it matters because it doesn't change the fact that a revocation, whatever the grounds, is just regarded as a portion of the penalty that has already been imposed at trial with the full array of constitutional rights. So, I think I may already be over my time. I'm happy to answer other questions. Can I ask one other question? So, I know you have lots of alternative arguments for why we should rule for you. But if, hypothetically, we ruled against you, would it be possible to get this tape? I don't know. You know, I asked the trial attorney about this a few days ago, and he said this whole issue, he wasn't aware of it until it came up in cross-examination. And I think it was ultimately really teed up in recross. This wasn't an issue that had been explored by our office. So, quite possibly, the answer is yes. I just don't know. Because this actual call by this time, how long ago is it? A year, two years? Right, and I just don't know the policy of overriding calls or getting rid of them. I just don't know. Okay, Mr. Howe, thank you. Thank you, Your Honor. Thank you, Your Honors. I'd like to pick up where Mr. Howe just left off. I think the correct way for the court to approach Your Honor's question is to reverse and remand for a hearing before the district court. There, the government can make a fact-driven presentation about whether the tape exists, what it can get, and whether we can still get it. You know, Mr. Howe, I think, concedes that his office's policy and his practice as a matter of prudence would be to produce Brady evidence. That hurts the government's position in the interest-balancing analysis to decide whether to extend Brady to this context. The government is telling the court here that it largely already tries to comply. The government is not saying that extension of Brady into this limited sphere would be unduly burdensome, impractical, or difficult to do. Brady's a due process right. Morrissey tells us that the minimum standards for due process apply in supervised release proceedings. Gagnon subsequently extends counsel to supervised release revocation proceedings. In an effort to allow defendants to present a defense, to cross-examine witnesses, extending Brady, another due process right, to this limited context, furthers those truth-seeking goals. It furthers the reliability and veracity of the evidence presented so that district courts can make the best choices possible when revoking supervised release. Mr. Smith is serving a two-year jail sentence for this. This is not a trivial kind of violation of his liberty. This is a really lengthy prison sentence. He never had a Brady right attached to these claims. The government has never produced Brady with respect to the domestic violence allegations in the state or in the federal courts. And this court should order the government to comply with Brady. Moving forward, supervised release proceedings like this would be more fair. And Mr. Smith or similar defendants in revocation proceedings would have a more fair opportunity to confront the allegations. It would assist district courts in making revocation findings based on more complete and fulsome evidence. And it's just, this is a plain matter of fairness and due process. It should apply here. And so, you know, for all of those reasons, the court needs to reverse and remand. One additional point that I'd like to finally make is that we've talked about the exculpatory nature of the 911 call related to Ms. Duncan's statement that she was possibly hit. But it's also impeaching because she repeatedly said, as Mr. Howe recognized in his argument, she repeatedly said to the police that the neighbor called 911. And Officer Truong says that that's not true, that she did. That is a core point of impeachment. And it would have allowed Mr. Smith to impeach her. And I'm sorry, she repeatedly said this at what stage? To Officer Truong or later? She repeatedly said this on the body camera footage. And she repeatedly says, for example, on government's exhibit 20, that she had not called 911 and that it in fact was the neighbor who had called 911. Exhibit 20 is what? Is that Truong's body cam? I'm not sure whose body camera footage it is from the incident. Exhibit 1 and 20 are the two body cam footages that we cite significantly in the briefs. But what's important is the time she's making the statement. She's making the statement when she's reporting to the police who hit her. And that's Mr. Smith in her statement. Her statement at that time is clear and direct. And she also says repeatedly that the neighbor called 911. And what Mr. Smith at his revocation hearing was wholly unable to do was to impeach her prior recorded statement. You know, she testified in court that it didn't happen. But Mr. Smith was unable to impeach her prior recorded statement to the police. And that's what this 911 call would have allowed him to do. And that's why it's so important. Because you think the 911 call is the neighbor's voice? No, because I think that Officer Truong was telling the truth. As he said, Ms. Duncan called 911. Ms. Duncan lied to the police repeatedly when she's reporting who hit her. She lies to the police in the same interaction about who calls 911. That is classic impeachment evidence that would have impeached her contemporary. Didn't she later say she lied to the police? She says that on the stand. She says she lied to the police about who hit her. And the district court and the government argue that this type of like subsequent recantation is common in domestic violence cases, which it largely is. But that was a subsequent statement that's vulnerable to being discredited, as the district court did, because of her feelings for Mr. Smith. By contrast, her contemporaneous statements to the police when reporting what happened are of a different kind. And those statements are what the government argued to the district court were very clear and reliable. And that's what the district court credited. That's what the 911 call would have impeached. And so that's why in this context, it's so unfair that the government produced selectively the prior recorded statements, but then omitted or suppressed the 911 call that would have impeached those prior statements. OK, well, thank you very much, Mr. Stitt. Thank you, Mr. Howe. We appreciate the arguments this morning. And this matter is submitted. That concludes our calendar for the week. The panel would like to thank Ms. Rhodes, our courtroom deputy, and the staff of the Chamber's Courthouse for their excellent work this week. And we are adjourned. All rise. This court for this session stands adjourned.
judges: Boggs, FRIEDLAND, BRESS